**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180691-U

Order filed June 23, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-18-0691 |
| | ) | Circuit No. 15-AR-663 |
| | ) | |
| STEVE S. YUN, | ) | The Honorable |
| | ) | Barbara N. Petrungaro, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   In an appeal in a civil case for breach of contract and account stated relating to the defendant's failure to pay the amount allegedly owed on his credit card account, the appellate court found that the trial court: (1) did not make a final ruling upon defendant's initial three affirmative defenses; (2) properly granted the plaintiff bank's section 2-619 motion to dismiss defendant's counterclaims, which alleged violations of the federal Truth in Lending Act (TILA); and (3) erred when it granted the bank's section 2-619 motion to dismiss defendant's counterclaim, which alleged violations of the federal Fair Credit Reporting Act (FCRA). The appellate court, therefore, took no action on defendant's claim of error regarding his initial three affirmative defenses, affirmed the trial court's grant of the bank's motion to dismiss defendant's TILA-based counterclaims, reversed the trial court's grant of the bank's motion to dismiss defendant's FCRA-based

counterclaim, and remanded defendant's FCRA-based counterclaim for further proceedings.

¶ 2         Plaintiff, Bank of America, N.A. (bank), filed an amended complaint in the trial court for breach of contract and account stated against defendant, Steve S. Yun, seeking to collect the amount that defendant allegedly owed and failed to pay on his credit card account with the bank. Defendant filed various affirmative defenses and counterclaims against the bank alleging, among other things, that the bank had violated both the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2012)) and the federal Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 *et seq.* (2012)). The bank filed section 2-619 motions (735 ILCS 5/2-619 (West 2016)) to dismiss the counterclaims arguing that the counterclaims were time barred by the applicable statutes of limitations. After conducting hearings on the matter, the trial court granted the bank's motions to dismiss and declined to rule upon defendant's initial three affirmative defenses. Defendant appeals, arguing that the trial court erred in: (1) rejecting his initial three affirmative defenses; (2) granting the bank's motion to dismiss his TILA-based counterclaims; and (3) granting the bank's motion to dismiss his FCRA-based counterclaim.[1] We agree with defendant's third argument and disagree with defendant's other two arguments. We, therefore, take no action on defendant's claim of error regarding his initial three affirmative defenses, affirm the trial court's dismissal of defendant's TILA-based counterclaims, reverse the trial court's dismissal of defendant's FCRA-based counterclaim, and remand defendant's FCRA-based counterclaim for further proceedings.

_____

[1] In addition to setting forth his claims of error, defendant asks in his reply brief that we strike the bank's response brief because the bank allegedly improperly obtained an extension to file that brief with this court. We have reviewed the procedural history of this case on appeal and do not agree with defendant's contention in that regard. Therefore, to the extent that defendant's request constitutes a motion to strike the bank's response brief, we deny that motion.

¶ 3                                    I. BACKGROUND

¶ 4          In December 2008, defendant opened a credit card account with the bank or with one of

the bank's predecessors. Defendant was authorized to use the account to make purchases, to

complete balance transfers, and to obtain cash advances. The credit card agreement for the

account required defendant to pay interest on any unpaid balance and to pay fees for such things

as making late payments or for exceeding the approved credit limit. Defendant used the account

to charge items and was sent monthly billing statements for the account by the bank. In

approximately May 2014, defendant stopped making the required periodic payments on the

account and his ability to use the account was subsequently suspended. In November 2014, the

bank closed (charged-off) the account for defendant's failure to make payment.

¶ 5          In August 2015, the bank filed a complaint in the trial court, seeking to collect from

defendant approximately $24,000 for the unpaid balance, interest, and fees on the account. An

amended complaint was later filed that alleged claims for breach of contract (count I) and

account stated (count II) against defendant. Various supporting documents were attached to the

amended complaint, including a copy of the credit card agreement, an affidavit establishing the

amount allegedly due and owing on the account, and copies of several of the prior monthly

billing statements that the bank had sent to defendant.

¶ 6          In July 2017, defendant, who represented himself *pro se* in this case, filed an answer and

denied certain aspects of the bank's claims. Defendant also filed three affirmative defenses: that

the amended complaint was not verified, that a copy of the relevant signed contract was not

attached to the amended complaint, and that the account stated claim was not valid because

defendant disputed the amount that was allegedly owed (collectively referred to hereinafter at

times as the initial three affirmative defenses). In addition, defendant filed six counterclaims

3

against the bank. Defendant's first five counterclaims alleged violations of the federal TILA based upon the bank's alleged failure to correct certain errors in defendant's billing statements after defendant notified the bank of those errors in February and March 2013 and sought damages for the amounts that were incorrectly charged to defendant's account, to compensate defendant for his lost time, and as statutory penalties. Defendant's sixth counterclaim alleged what defendant had titled as "defamation of character and denial of credit."[2] Defendant attached to his pleadings various supporting documents, including copies of the two notices that defendant had sent to the bank regarding the billing errors in his account. In the first notice, which was dated February 22, 2013, defendant asked the bank to credit the erroneously-listed amount (approximately $2100 for items that defendant claimed he had not charged) to his account. In the second notice, which was dated March 28, 2013, defendant pointed out that the bank had not corrected the billing errors and asked the bank to immediately stop "illegal collection activities" and "reporting delinquency to credit bureaus." The defendant stated further in the notice that he would not pay until the bank credited the erroneously-listed amount to his account with late fees and interest.

¶ 7 Later that same month (July 2017), the bank filed a section 2-619 motion to dismiss defendant's counterclaims with prejudice. The bank asserted in the motion that defendant's five TILA-based counterclaims (counterclaims I through V) were subject to dismissal because they were time barred by the TILA one-year statute of limitations (15 U.S.C. § 1640(e) (2012)) and that defendant's remaining counterclaim for defamation and denial of credit (counterclaim VI) was subject to dismissal as well because it was time barred by the state statute of limitations for

---

[2] In defendant's counterclaims, this title was listed in bold and all capital letters and was underlined. We have changed the formatting of the title here for the convenience of the reader.

4

defamation claims (735 ILCS 5/13-201 (2016)) and because it was pre-empted by the federal FCRA.

¶ 8        Defendant filed a response opposing the motion to dismiss. Defendant asserted in his response that the state counterclaim savings statute (735 ILCS 5/13-207 (West 2016)) prevented his five TILA-based counterclaims from being time barred by the TILA statute of limitations. As to his other counterclaim, defendant asserted that he was claiming a denial of credit, not defamation, and that the state statute of limitations cited by the bank, therefore, did not apply.

¶ 9        The bank filed a reply to defendant's response and maintained its previous positions. The bank also argued that the state counterclaim savings statute did not prevent defendant's five TILA counterclaims from being time barred because the statute of limitations period for defendant's counterclaims had expired before the bank's claim had arisen.

¶ 10       In October 2017, the trial court held a hearing on the bank's motion to dismiss. After listening to the oral arguments of the parties, the trial court took the case under advisement. The following month, the trial court issued a written ruling, granting the bank's motion in part. In its ruling, the trial court found that defendant's five TILA-based counterclaims were time barred by the one-year statute of limitations and were not saved by the state counterclaim savings statute because the statute of limitations period for defendant to file a TILA claim had already expired before the bank initially filed the instant lawsuit. The trial court ruled, therefore, that defendant could only raise the alleged TILA violations as an affirmative defense for recoupment or set-off. In addition, the trial court noted in its order that during oral argument on the motion, defendant had argued that his initial three affirmative defenses justified a dismissal of the bank's lawsuit in this case. The trial court commented in the order that defendant's argument in that regard was to be raised at a hearing or trial on the matter and that the trial court had "rejected [that argument]

5

at this stage of the proceedings." As a result of its findings, the trial court granted the bank's section 2-619 motion to dismiss with prejudice as to defendant's five TILA-based counterclaims. As to defendant's sixth counterclaim, however, the trial court granted defendant leave to amend, since defendant had indicated on the record that he was withdrawing his claim of defamation.

¶ 11    In December 2017, defendant filed his first amended affirmative defenses and first amended counterclaim. In the first amended affirmative defenses, defendant restated all of his previously-dismissed TILA-based counterclaims as affirmative defenses and sought damages for those affirmative defenses, including damages for the incorrect credit charges, compensation for lost time, and statutory penalties. In the first amended counterclaim, which was defendant's attempt to amend his prior counterclaim VI, defendant sought damages for the profits that he had allegedly lost from possible business opportunities because he was denied credit due to the negative credit reports that had been issued by the bank to the consumer credit reporting agencies. Defendant titled that counterclaim as one for "[l]ost [p]rofit by [d]enial of [c]redit."

¶ 12    In January 2018, the bank filed a section 2-619 motion to dismiss defendant's first amended affirmative defenses and defendant's first amended counterclaim with prejudice. The bank asserted in the motion that defendant's first amended affirmative defenses should be stricken because they were merely a relabeling of the prior counterclaims that the trial court had previously dismissed with prejudice as being time barred. The bank asserted further that defendant's first amended counterclaim was also subject to dismissal because it was preempted by the FCRA.

¶ 13    Defendant filed a response opposing the motion to dismiss, the bank filed a reply to defendant's response, and defendant filed a response to the bank's reply.

¶ 14    In February 2018, the trial court held a hearing on the bank's motion to dismiss. After listening to the oral arguments of the parties, the trial court granted the motion in part and dismissed with prejudice defendant's first amended affirmative defenses that were based upon the alleged TILA violations. As to the first amended counterclaim, however, the trial court again granted defendant leave to replead.

¶ 15    In March 2018, defendant filed his second amended affirmative defenses and his second amended counterclaims. In his second amended affirmative defenses, defendant again restated all of his previously-dismissed TILA-based counterclaims as affirmative defenses. Defendant took the same approach with his second amended counterclaims and again restated all of his previously dismissed TILA-based counterclaims as new counterclaims for set-off. In addition, defendant also restated his counterclaim for lost profits and stated in that claim for the first time that the bank had violated the FCRA.

¶ 16    In April 2018, the parties appeared before the trial court for a status hearing. After some discussion between the parties and the trial court, the trial court entered an order essentially clarifying the previous order it had entered in November 2017 and dismissed with prejudice all of defendant's second amended counterclaims that were based upon TILA violations. In addition, the trial court again ruled that any of defendant's affirmative defenses that were based upon TILA violations were limited to set-off or recoupment.

¶ 17    In May 2018, new attorneys entered their appearance for the bank and filed a section 2-619 motion to dismiss defendant's one remaining second amended counterclaim—the counterclaim that was based upon violations of the FCRA. In the motion, the bank alleged that the counterclaim was subject to dismissal because it was time barred by the two-year FCRA statute of limitations (15 U.S.C. § 1681(p)(1) (2012)).

7

¶ 18    Defendant filed a response opposing the motion to dismiss and asserted that the bank's argument regarding the statute of limitations had already been raised and rejected by the trial court. Defendant attached to his response as a supporting document a notice he had sent to one of the consumer credit reporting agencies notifying the agency that the bank had allegedly failed to correct its billing errors and had illegally reported adverse information about defendant to the agency. The notice was dated September 19, 2014.

¶ 19    The bank filed a reply to defendant's response and maintained its previous position. In its reply, the bank disputed defendant's allegation that the trial court had already rejected the bank's statute of limitations argument. Defendant filed a response to the bank's reply.

¶ 20    In August 2018, the trial court held a hearing on the bank's motion to dismiss. After listening to the oral arguments of the parties, the trial court took the case under advisement. The trial court later issued a written ruling granting the bank's motion. The trial court found in its ruling that defendant's one remaining second amended counterclaim (the FCRA-based counterclaim) was time barred by the two-year FCRA statute of limitations because it was not filed until approximately a year after the statute of limitations period had expired.

¶ 21    Defendant filed a motion to reconsider (titled as a motion to vacate), which the trial court denied after a hearing. At that same time, the bank orally moved to voluntarily dismiss all of its claims against defendant, and the trial court granted the bank's motion. Defendant appealed.

¶ 22                                II. ANALYSIS

¶ 23    As noted above, defendant argues on appeal that the trial court erred in: (1) rejecting his initial three affirmative defenses; (2) granting the bank's motion to dismiss his TILA-based counterclaims; and (3) granting the bank's motion to dismiss his FCRA-based counterclaim. We will address each of those arguments in turn.

8

¶ 24                    A. Defendant's Initial Three Affirmative Defenses

¶ 25        As his first point of contention on appeal, defendant argues that the trial court erred in rejecting his initial three affirmative defenses—that the amended complaint was not verified, that a copy of the relevant signed contract was not attached to the amended complaint, and that the account stated claim was not valid because defendant disputed the amount that was allegedly owed. According to defendant, the bank's amended complaint should have been stricken or dismissed in the trial court based upon those affirmative defenses. As the bank correctly points out, however, the record clearly shows that even though the trial court used the term, "rejected," it did not make any type of a final ruling on defendant's affirmative defenses. Rather, the trial court merely informed defendant at the hearing on the bank's motion to dismiss that the affirmative defenses were not currently before the court for hearing and that the affirmative defenses were matters to be raised at the trial or later hearing in this case. Since there was no final order entered on defendant's initial three affirmative defenses, we have no jurisdiction to rule upon that particular claim of error and take no action on that portion of defendant's appeal. See *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9 (recognizing that unless a supreme court rule provides for jurisdiction, the appellate court has no jurisdiction to review trial court orders that are not final).

¶ 26                        B. Defendant's TILA-Based Counterclaims

¶ 27        As his second point of contention on appeal, defendant argues that the trial court erred in granting the bank's section 2-619 motion to dismiss defendant's TILA-based counterclaims. More specifically, defendant contends that the trial court erred in finding that defendant's TILA-based counterclaims were time barred by the statute of limitations, in granting the bank's motion to dismiss those counterclaims on that basis, and in ordering that defendant could only raise the

9

alleged TILA violations as an affirmative defense for set-off or recoupment. In support of that contention, defendant asserts first that the trial court incorrectly determined that the statute of limitations period started to run in this case in February and March 2013 when defendant sent the billing errors notices to the bank. To the contrary, defendant maintains, because the bank failed to send defendant an acknowledgement that it had received the notices and failed to correct the billing errors, defendant did not discover the bank's TILA violations until a much later date. Thus, defendant contends that the statute of limitations period had not yet expired when defendant filed the TILA-based counterclaims and that the trial court, therefore, should not have granted the bank's motion to dismiss. Second, defendant asserts that even if the statute of limitations period had otherwise expired before he had filed the TILA-based counterclaims, the bank's motion to dismiss still should not have been granted because defendant's counterclaims were saved by the Illinois counterclaim savings statute (section 13-207 of the Code of Civil Procedure (Illinois Code) (735 ILCS 5/13-207 (West 2016)). Third and finally, defendant asserts that contrary to the trial court's ruling, he was not limited to raising the alleged TILA violations as an affirmative defense for set-off or recoupment because section 1640(h) of the TILA (15 U.S.C. § 1640(h) (2012)) and section 2-608 of the Illinois Code (735 ILCS 5/2-608 (West 2016)) specifically allow defendant to raise those violations as counterclaims. For all of the reasons stated, defendant asks that we reverse the trial court's grant of the bank's section 2-619 motion to dismiss defendant's TILA-based counterclaims and that we remand this case for further proceedings on those counterclaims.

¶ 28      The bank argues that the trial court's ruling was proper and should be upheld. In response to defendant's assertions, the bank contends first that the trial court correctly found that the statute of limitations period for defendant's TILA-based counterclaims started to run in

10

February and March 2013 (when defendant notified the bank of the alleged billing errors) and that defendant's TILA-based counterclaims, which were filed in July 2017, were time barred by the one-year TILA statute of limitations. Second, the bank contends that the Illinois savings statute does not save defendant's TILA-based counterclaims from the TILA statute of limitations because defendant's counterclaims were time barred before the bank's claims arose in November 2014 when the bank charged-off defendant's credit card account.[3] Third, the bank contends that the trial court correctly found that defendant's TILA-based counterclaims could only be pled as an affirmative defense for set-off or recoupment because there is nothing in section 1640(h) of the TILA or section 2-608 of the Illinois Code—the two sections upon which defendant relies— that overrides the statute of limitations period set forth in section 1640(e) of the TILA. For all of the reasons set forth, the bank asks that we affirm the trial court's judgment granting the bank's section 2-619 motion to dismiss defendant's TILA-based counterclaims.

¶ 29        Section 2-619 of the Illinois Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2016); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The statute's purpose is to

---

[3] As at least one court has recently recognized, there is not much Illinois law on when the limitations period starts to run (when a cause of action accrues) on a delinquent credit card account. See *CACH, LLC v. Moore*, 2019 IL App (2d) 180707, ¶ 12. The general rule is that a limitations period starts to run when a party has the right to invoke the aid of the court and to enforce his remedy. See *id.* Some courts have indicated that the statute of limitations on a bank's cause of action for a debtor's failure to pay his credit card bill starts to run on either the date the credit card account was charged-off or on the last date of payment. See, *e.g.*, *Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F. Supp. 2d 842, 846 (N.D. Ill. 2009). In this particular case, the billing records attached as an exhibit to one of the bank's motions to dismiss indicates that defendant made the minimum payment that was due in April 2014 but failed to make the payment that was due the following month or any payment thereafter. Defendant's account was charged-off by the bank in November 2014. The bank asserts in this case that its cause of action accrued on that date, the charge-off date, and defendant does not dispute that contention. We, therefore, have accepted the November 2014 date as the accrual date, as the trial court apparently did as well.

provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several different grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2016). Under subsection (a)(5), the subsection that applies in this case, a defendant may obtain an involuntary dismissal of an action if the action was not commenced within the time limits provided by law. 735 ILCS 5/2-619(a)(5) (West 2016). In ruling upon a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68. On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo. Id.* at 368; *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008) (applying a *de novo* standard of review to a section 2-619(a)(5) dismissal). When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of a section 2-619 motion to dismiss a complaint may be affirmed on any basis supported by the record. *Board of Trustees of Community College, District No. 508, County of Cook v. Coopers & Lybrand LLP*, 296 Ill. App. 3d 538, 543 (1998).

¶ 30      To resolve this particular issue on appeal, we must examine the provisions of both the federal act and the Illinois Code. The applicable federal act for this issue, the TILA, was enacted in 1968 to ensure that credit terms were disclosed in a meaningful way so that consumers could readily and knowledgeably compare the credit options that were available to them. See 15

12

U.S.C. § 1601(a) (2012); *Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*, 2015 IL 117950, ¶ 20. Pursuant to the TILA and of relevance to this appeal, a creditor who receives a written billing errors notice from an obligor is required to follow a certain specified procedure, which includes: acknowledging receipt of the notice within 30 days; correcting any alleged errors and notifying the obligor of the same or of the reason for denying correction within 90 days; and refraining from attempting to collect the disputed amount, restricting or closing the account, accelerating the debt, or issuing negative credit reports regarding the obligor's failure to pay the disputed amount during the 90 day investigation period. 15 U.S.C. §§ 1666, 1666a (2012); 12 C.F.R. § 1026.13 (2013). Failure to satisfy the requirements of the TILA can subject a creditor to criminal penalties and/or civil liability for actual damages, statutory penalties, costs, and attorney fees. See 15 U.S.C. §§ 1611, 1640(a) (2012); *U.S. Bank National Ass'n v. Manzo*, 2011 IL App (1st) 103115, ¶¶ 18, 48. Civil liability claims for TILA violations, such as those raised in the present case, are generally subject to a one-year statute of limitations. 15 U.S.C. § 1640(e) (2012); *Beneficial Illinois, Inc. v. Parker*, 2016 IL App (1st) 160186, ¶ 18; *Manzo*, 2011 IL App (1st) 103115, ¶ 48.

¶ 31 The TILA, however, contains its own savings clause, which states as follows:

> "This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e) (2012).

Thus, the TILA allows a person in a collection case to bring an otherwise time barred TILA claim if the person does so as a matter of defense by recoupment or set-off, unless the state's

own law provides otherwise. See 15 U.S.C. § 1640(e) (2012); *Parker*, 2016 IL App (1st) 160186, ¶ 18. Courts in Illinois have interpreted the TILA savings provision to mean that a TILA damages counterclaim may be filed, even after the statute of limitations period has expired, if the counterclaim was brought as a defense by recoupment or set-off under Illinois law and complies with the requirements of section 13-207 of the Illinois Code. See *Parker*, 2016 IL App (1st) 160186, ¶ 18.

¶ 32        Section 1640(h) of the TILA, another one of the statutory sections defendant relies upon in this case, provides as follows:

> "A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter." 15 U.S.C. § 1640(h) (2012).

¶ 33        Turning to the Illinois Code, section 13-207, the state counterclaim savings statute, provides, in pertinent part, that:

> "A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such

14

set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207 (West 2016).

Illinois courts have interpreted section 13-207 as allowing a defendant to file a counterclaim even if the claim would have been time barred if filed as a separate action. *Parker*, 2016 IL App (1st) 160186, ¶ 19. However, for a defendant to be able to bring a time barred counterclaim pursuant to section 13-207, the counterclaim must not have been time barred before the cause of action that formed the basis of the bank's primary complaint arose. *Id.*

¶ 34    Finally, section 2-608(a) of the Illinois Code, which addresses counterclaims and is another one of the statutory sections that defendant relies upon in this case, provides that:

    "Any claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim." 735 ILCS 5/2-608(a) (West 2016).

¶ 35    In the present case, after reviewing the pleadings and supporting documents in the light most favorable to defendant and considering the above-referenced statutes, we find that defendant's TILA-based counterclaims were time barred by the one-year TILA statute of limitations and were not saved by the state counterclaim savings statute. The record in this case clearly shows that defendant sent his written billing errors notices to the bank in February and March 2013. Under the provisions of TILA, the bank had 30 days to acknowledge receipt of the notices (and 90 days to correct any errors and to notify defendant). See 15 U.S.C. § 1666(a) (2012); 12 C.F.R. § 1026.13(c) (2013). After the 30-day period had passed and the bank had not

15

acknowledged receipt of the notices, defendant would have been aware that the bank was in violation of the TILA requirements. See 15 U.S.C. § 1666(a) (2012); 12 C.F.R. § 1026.13(c) (2013). Thus, the TILA statute of limitations would have started to run at that time (March and April of 2013) and would have expired one year later (March and April 2014). See 15 U.S.C. § 1640(e) (2012). Defendant's TILA-based counterclaims, therefore, were time barred by the one-year TILA statute of limitations before defendant filed those counterclaims in July 2017. See 15 U.S.C. § 1640(e) (2012); *Parker*, 2016 IL App (1st) 160186, ¶ 18.

¶ 36        Under the provisions of the TILA and section 13-207 of the Illinois Code, defendant still could have raised the TILA violations as counterclaims in a suit brought against him by the bank and the counterclaims would been saved from the application of the TILA statute of limitations, if the counterclaims were not time barred by the statute of limitations before the bank's primary cause of action arose. See 15 U.S.C. § 1640(e) (2012); 735 ILCS 5/13-207 (West 2016); *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19. However, the record in this case clearly shows that the statute of limitations period for defendant's TILA-based counterclaims expired in March and April 2014, several months before the bank's primary cause of action later arose in November 2014 when the bank charged-off defendant's account. Thus, defendant's TILA-based counterclaims could not be saved from the application of the one-year statute of limitations by the state counterclaim savings statute (section 13-207 of the Illinois Code). See 15 U.S.C. § 1640(e) (2012); 735 ILCS 5/13-207 (West 2016); *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19. As the trial court correctly found, therefore, defendant could only raise the alleged TILA violations as an affirmative defense for set-off or recoupment. See 15 U.S.C. § 1640(e) (2012); 735 ILCS 5/13-207 (West 2016); *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19.

16

¶ 37        Furthermore, although defendant asserts that section 1640(h) of the TILA and section 2-608 of the Illinois Code specifically allow defendant to raise the TILA violations as counterclaims, there is nothing in those two statutory sections that would override the manner in which section 1640(e) of the TILA and section 13-207 of the Illinois Code would apply to the facts of this case.  We, therefore, affirm the trial court's ruling granting the bank's section 2-619 motion to dismiss defendant's TILA-based counterclaims.

¶ 38                          C. Defendant's FCRA-Based Counterclaim

¶ 39        As his third point of contention on appeal, defendant argues that the trial court erred in granting the bank's section 2-619 motion to dismiss defendant's FCRA-based counterclaim. More specifically, defendant contends that the trial court erred in finding that defendant's FCRA-based counterclaim was time barred by the statute of limitations and in granting the bank's motion to dismiss the counterclaim on that basis.  In support of that contention, defendant asserts first that the trial court should have denied the motion to dismiss because the trial court had already rejected the same arguments by the bank as to the same counterclaim in ruling upon the bank's prior two motions to dismiss.  In making that contention, defendant claims that he asserted an FCRA-based counterclaim in each of his three filings (the original set of counterclaims, the first amended set of counterclaims, and the second amended set of counterclaims) and that the trial court was incorrect when it found that defendant had not asserted an FCRA-based counterclaim until defendant had filed his second amended set of counterclaims.[4]  Second, defendant asserts that the trial court incorrectly determined that the statute of limitations period had started to run in this case in September 2014, when defendant

_____

[4] In its written order granting the bank's motion to dismiss defendant's FCRA-based counterclaim, the trial court stated that the second amended counterclaim (the FCRA-based counterclaim) was filed in December 2017.  Our review of the record indicates, however, that the second amended counterclaim was actually filed in March 2018.

17

sent the dispute notice to the consumer credit reporting agency, or at the latest, in December 2014, following the 45 day period the bank would have had to respond after being notified of the dispute by the agency (see 15 U.S.C §§ 1681i(a), 1681s-2(b) (2012)). To the contrary, defendant maintains, he did not know about the possible FCRA claim with sufficient specificity until he was served with the bank's initial complaint the following year in September 2015. Thus, defendant contends that the two-year FCRA statute of limitations period in this case did not expire until September 2017 and was not expired, therefore, when defendant filed his initial set of counterclaims in this case in July 2017. Third, defendant asserts that even if the two-year statute of limitations period had otherwise expired before defendant had filed the FCRA-based counterclaim, the bank's motion to dismiss still should not have been granted because defendant's counterclaim was saved by the Illinois counterclaim savings statute (section 13-207 of the Illinois Code). For all of the reasons stated, defendant asks that we reverse the trial court's grant of the bank's section 2-619 motion to dismiss defendant's FCRA-based counterclaim and that we remand this case for further proceedings on that counterclaim.

¶ 40    The bank argues that the trial court's ruling was proper and should be upheld. In response to defendant's assertions, the bank contends first that the record shows that the trial court did not previously deny or reject the bank's arguments as to what started out as defendant's initial counterclaim VI and, instead, merely allowed defendant to replead his counterclaim two times. Second, the bank contends that the trial court correctly found that defendant was aware of his potential FCRA claim no later than December 2014 (45 days after defendant sent the dispute letter to the credit reporting agency) and failed to raise that claim before the two-year statute of limitations period expired in December 2016. In making that contention, the bank maintains that the record in this case shows, as the trial court correctly found, that defendant did not assert an

18

FCRA-based counterclaim until defendant filed his second amended set of counterclaims in this case. Third, the bank contends that defendant's FCRA-based counterclaim was not saved by the state counterclaim savings statute (section 13-207 of the Illinois Code) because defendant did not file that counterclaim within a reasonable time period after the bank's lawsuit was filed, did not raise the FCRA violation as one of his initial counterclaims, and did not raise the FCRA violation until more than two years after the bank had filed its initial lawsuit in this case. Fourth, the bank contends that defendant's FCRA-based counterclaim cannot stand here because the bank voluntarily dismissed all of its claims against defendant prior to this appeal and defendant cannot move forward on his counterclaim alone. For all of the reasons set forth, the bank asks that we affirm the trial court's ruling granting the bank's section 2-619 motion to dismiss defendant's FCRA-based counterclaim.

¶ 41    The legal principles that apply when an appellate court reviews a trial court's grant of a section 2-619 motion to dismiss have been stated above and will not be repeated here. As noted previously, a trial court's grant of a section 2-619 motion to dismiss is subject to a *de novo* standard of review on appeal. *Van Meter*, 207 Ill. 2d at 368; *Porter*, 227 Ill. 2d at 352.

¶ 42    As with the prior issue, to resolve this third issue on appeal, we must consider the provisions of both the federal act and the Illinois Code. The applicable federal act for this issue, the FCRA, was enacted in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. See 15 U.S.C. § 1681 (2012); *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 52 (2007). Under the FCRA and of relevance to this appeal, when a consumer directly notifies a consumer credit reporting agency of alleged errors in the consumer's credit report relative to a particular party that has furnished information to the agency about the consumer, the agency is required to notify the furnishing party of the

19

dispute notice, and the furnishing party must investigate the matter and respond to the agency within 45 days. See 15 U.S.C. §§ 1681i(a), 1681s-2(b) (2012)). Failure to comply with the requirements of the FCRA may subject a furnishing party to civil liability for actual damages, costs, attorney fees, and, in some cases, punitive damages. See 15 U.S.C. §§ 1681n, 1681o (2012)). Civil liability claims for FCRA violations are subject to the earlier of either a two year statute of limitations that runs from the point of discovery or a five year statute of limitations that runs from the date of the violation. See 15 U.S.C. § 1681p (2012). In addition, as noted above, section 13-207 of the Illinois Code, the state counterclaim savings provision, allows a defendant to file a counterclaim that is otherwise time barred by the statute of limitations if the counterclaim was not time-barred before the bank's primary cause of action arose. See 735 ILCS 5/13-207 (West 2016); *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19.

¶ 43    In the instant case, after having reviewed the record and the applicable statutes, we find that although defendant's FCRA-based counterclaim was otherwise time barred by the statute of limitations, it was not barred here because it was saved by the Illinois counterclaim savings statute. With regard to defendant's FCRA-based counterclaim, the record in this case shows that in September 2014, defendant notified the consumer reporting agency of the bank's alleged billing errors, the bank's failure to correct those errors, and the allegedly erroneous negative credit reports that the bank had issued to the agency about defendant. The bank had 45 days from that point to take action upon defendant's complaint to the consumer reporting agency (see 15 U.S.C §§ 1681i(a), 1681s-2(b) (2012)), and the consumer credit reporting agency had 5 business days thereafter to notify defendant of the results of its investigation (see 15 U.S.C. § 1681i(a)(6)(A) (2012)). Thus, in approximately December 2014, as the trial court correctly found, defendant would have known about his potential FCRA claim against the bank. See 15

20

U.S.C. §§ 1681i(a), 1681s-2(b) (2012). Under the FCRA, therefore, defendant had until two-years after that point—until December 2016—to file such a claim. See 15 U.S.C. § 1681p (2012). Defendant did not raise his FCRA-based counterclaim until March 2018 when defendant filed his second amended set of counterclaims. Thus, defendant's FCRA-based counterclaim was otherwise time barred by the statute of limitations before defendant filed that counterclaim. See *id.*

¶ 44        However, under the state counterclaim savings statute (section 13-207 of the Illinois Code), defendant could still file his FCRA-based counterclaim in response to a suit brought against him by the bank, as long as his FCRA-based counterclaim was not time barred before the bank's primary cause of action arose. See 735 ILCS 5/13-207 (West 2016); *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19. In this case, the bank's primary cause of action arose in November 2014 (when the bank charged-off defendant's account), which was well before the statute of limitations period had expired on defendant's counterclaim in December 2016. The state counterclaim savings statute, therefore, saves defendant's FCRA-based counterclaim from being time barred. See *Parker*, 2016 IL App (1st) 160186, ¶¶ 18-19. Thus, the trial court erred when it reached the opposition conclusion.

¶ 45        Furthermore, although the bank claims that defendant's FCRA-based counterclaim cannot go forward because the bank has dismissed all of its claims against defendant, the law is well established in this area that the dismissal of the bank's lawsuit does not prevent defendant from being able to proceed against the bank on his FCRA-based counterclaim. See, *e.g.*, *Ogg v. City of Springfield*, 121 Ill. App. 3d 25, 34 (1984) (recognizing that a party's counterclaim could still go forward even though the underlying cause of action against that party had been dismissed). In addition, despite the bank's implied assertion to the contrary, we find nothing in

21

the language of section 13-207 of the Illinois Code that would impose additional requirements upon defendant regarding the reasonableness of when defendant's FCRA-based counterclaim was eventually filed.

¶ 46                                III. CONCLUSION

¶ 47        For the foregoing reasons, we take no action on defendant's claim of error regarding his initial three affirmative defenses, we affirm the trial court's dismissal of defendant's TILA-based counterclaims, we reverse the trial court's dismissal of defendant's FCRA-based counterclaim, and we remand defendant's FCRA-based counterclaim for further proceedings.

¶ 48        Affirmed in part and reversed in part; cause remanded.